

Bridgewater Place | Post Office Box 352
Grand Rapids, Michigan 49501-0352
Telephone 616 / 336-6000 | Fax 616 / 336-7000 | www.varnumlaw.com

**Ronald G. DeWaard**   Direct 616 / 336-6480
rgdewaard@varnumlaw.com

September 13, 2019

**BY ECF AND OVERNIGHT MAIL**

Honorable Kiyo A. Matsumoto
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

    Re:    United States v. Ingrid Innes
            Criminal Docket No. 18-134 (S-2)(KAM)

           **Response in Opposition to Government's Motion (Docket #54) for a Finding That a Document Created by Innes – At the Direction of and For Her Counsel – Is Not Protected By the Attorney-Client Privileged.**

Dear Judge Matsumoto:

       We represent Ingrid Innes ("Innes") in connection with the government's motion (Docket #54) for a finding that a communication created by Innes is not protected by the attorney-client privilege. Innes prepared the communication, entitled a "Chronological Order of Events," at the direction of and for her counsel for the purpose of securing legal advice. She saved the document to the local hard drive of her computer device, not to ICBL's computer system. Using a private email account, Innes provided that document in confidence only to her legal counsel. That document is quintessentially an attorney-client privileged communication. Innes did not waive the privilege when, complying with a directive received from her employer, she returned company-issued computer devices and inadvertently forgot to remove a copy of the attorney-client privileged communication. Because the document is protected by the attorney-client privilege, Innes submits this response in opposition to the government's motion. Innes' counsel requests oral argument on this motion and the opportunity to appear telephonically.

**I.**     **Background and Summary of Argument**

      When Ingrid Innes, who served as the CEO of Insurance Company of Barbados Limited ("ICBL") from approximately 2012, was put on suspension pending an investigation on October 5 2016, Innes secured legal counsel in Barbados to represent her in connection with the investigation and in anticipation of potential litigation relating to her employment. *See* Declaration of Ingrid Innes, ¶¶ 2-3, attached as **Exhibit 1**.[1] To provide legal advice, Innes'

---

[1] Innes' declaration is being submitted to the Court only for *in camera* review to preserve

counsel requested that Innes prepare for his use a summary of the background facts and events leading to her suspension. *Id.* ¶ 4. Complying with this request, and while out-of-the-office on vacation overseas, Innes prepared a document, entitled "Chronological Order of Events" (the "attorney-client privileged document"). *Id.* ¶ 5. She prepared the document on a company-issued device, the only device she had while on vacation, which she occasionally used for personal use. *Id.* ¶ 6. She saved the document to the device's local hard drive; it was not saved on ICBL's computer system. *Id.* ¶ 7. Using her private Gmail account, Innes emailed the document to her counsel on Sunday, October 9, 2016. *Id.* ¶ 8. *See also* October 9, 2016 email from Innes to Tariq Khan, attached as **Exhibit 2**.[2]

Innes' communication to her counsel falls within the core of the type of communications that are to be protected by the attorney-client privilege. Serving the "broader public interests in the observance of law and administration of justice," the attorney-client privilege facilitates "full and frank communication between attorneys and their clients." *See Orbit One Commc'ns, Inc. v. Numerex Corp.*, 255 F.R.D. 98, 103 (S.D.N.Y. 2008). That is precisely what this communication was. To provide legal advice, Innes' counsel requested that Innes provide him the background facts and events, as she understood them, relating to the dispute.

Notwithstanding that Innes prepared the document for her legal counsel for the purpose of securing legal advice, the government argues that the document is not privileged, claiming that (1) it was not confidential because it was prepared on a company-issued device, or (2) Innes waived the privilege when, at the company's direction, she returned the device to the company, while inadvertently forgetting to remove the document. The government is wrong on both accounts.

*First,* when Innes prepared the attorney-client privileged document, she intended it to be confidential and it was confidential. While she created the document using a company-issued device, it was saved only to the computer's local hard drive, not to ICBL's computer-server. Furthermore, she provided the document to her counsel using her private email account, not her employer's email account. When Innes prepared and sent the document to her counsel, ICBL had no access to it. The attorney-client privilege document was confidential.[3]

*Second*, Innes did <u>not</u> waive the privilege when, complying with the company's directive, she returned her company-issued devices, while inadvertently forgetting to remove the

---

her attorney-client privilege.

[2] This email is being submitted to the Court only for *in camera* review, because the email communication from Innes to her counsel is protected by the attorney-client privilege.

[3] The government suggests that, even though Innes saved the attorney-client privileged document to her local hard drive, ICBL had the ability to "monitor" the document "if the defendant had logged into ICBL's system remotely using a VPN network." But the government presents no evidence that ICBL ever monitored the documents on any employees' local hard drive through a VPN network connection, let alone that they monitored Innes' documents saved on her local hard drive.

document. In late October 2016, ICBL directed Innes to immediately return her computer and phone to the company. *See* Ex. D to Gov't Mot., DOJ-CDL-00050259 (directing Innes, in an email sent at 9:49 p.m., to turn over her computer and phone "first thing tomorrow morning"). *See also,* Innes Decl. ¶ 10 (Ex. 1). Having created the document weeks earlier, and in complying with the company's demand that she immediately return her devices, Innes simply forgot that the attorney-client privileged document was saved on the local hard drive on one of her devices. *See* Innes. Decl. ¶ 13 (Ex. 1). This is not a case where a party disclosed a handful of hard copy documents, one of which was a privileged communication. Innes turned over several electronic devices that likely contained hundreds if not thousands of files, only one of which was a copy of the attorney-client privileged document. Waivers of the attorney-client privilege should not be found based on a simple mistake, especially in a criminal case where a defendant's liberty is at stake and the privileged document is her description of events prepared for her attorney at her attorney's specific request.

Innes and her counsel also promptly took steps to rectify the inadvertent disclosure. Innes and her counsel did not discover that the attorney-client privileged document had been inadvertently disclosed until it was shown to them during an interview of Innes being conducted by KPMG in connection with the investigation. Innes' counsel informed KPMG that the document was protected by the attorney-client privilege, directed Innes not to answer questions about the document, and terminated the interview. Moreover, Innes' counsel formally objected to ICBL's use of the document in connection with an employment hearing, reaffirming that the document was privileged. *See* **Exhibit 3** ("This item is subject to privilege, client and attorney privilege. It was produced in a series of emails where I have clearly indicated that the subject matter is confidential and privileged. I continue to assert this privilege on behalf of my client. This item should therefore be removed from the exhibits or indeed not exhibited at all during the course of the hearing."). During the government's investigation, the undersigned counsel also informed the government's counsel (in a May 10, 2017 letter) that the document created by Innes for her counsel was protected by the privilege, which had not been waived.

This Court should not countenance the government's attempt to abrogate Innes' attorney-client privilege. Even the government's own policies acknowledge the importance of the privilege to the fair administration of justice. *See* Justice Manual § 9-28.710 ("The attorney-client privilege and the attorney work product <u>protection serve an extremely important function in the American legal system</u>. The attorney-client privilege <u>is one of the oldest and most sacrosanct privileges under the law</u>. . . . The Department understands that the attorney-client privilege and attorney work product protection are <u>essential and long recognized components of the American legal system</u>."). Finding a waiver of the privilege here, where the document was inadvertently disclosed and where counsel immediately asserted the privilege when the mistake was discovered, would severely undermine the principles served by the privilege. *See e.g., In re Grand Jury Investigation*, 399 F.3d 527, 536 (2d Cir. 2005) (refusing to countenance the abrogation of the attorney-client privilege "in circumstances to which its venerable and worthy purposes fully pertain").

The government's motion (Docket #54) should be denied.

## II. Argument

"The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law." *Orbit One Commc'ns*, 255 F.R.D. at 103 (citation omitted). "By facilitating full and frank communication between attorneys and their clients, the attorney-client privilege lays the foundation for effective representation." *Id*. (citation and internal quotation marks omitted). To that end, it "promotes broader public interests in the observance of law and administration of justice." *Id*. (citation and internal quotation marks omitted).

Under federal law, a "client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client." *In re Asia Glob. Crossing, Ltd.*, 322 B.R. 247, 255 (Bankr. S.D.N.Y. 2005) (citations and quotation marks omitted). There is no dispute that Innes prepared the attorney-client privileged document at the direction of and for her counsel for the purpose of securing legal advice. *See* Innes Decl. ¶¶ 4-5 (Ex. 1). Nor is there any dispute that she provided the document to her counsel in confidence using her private Gmail account. *Id*. ¶ 8. *See also*, Ex. 2. Nonetheless, the government argues that the document is not privileged because it was saved to a company-issued device or that the privilege was waived when Innes complied with the company's direction to promptly return her company-issued devices. The government is wrong on both accounts.

### A. Innes Intended That the Attorney-Client Privileged Document Be and Remain Confidential.

The privilege applies to confidential communications, i.e., those whose "circumstances indicate that it was not intended to be disclosed to third persons other than (1) those to whom disclosure is in furtherance of the rendition of legal services to the client, or (2) those reasonably necessary for the transmission of the communication." *In re Asia Glob. Crossing, Ltd.*, 322 B.R. at 255. To determine whether a communication is confidential, the privilege holder must show that it was (1) intended to remain confidential, and (2) under the circumstances was reasonably expected to remain confidential. *Id*.

Innes intended that the attorney-client privileged document would remain confidential. Innes prepared the document at the direction of and for her counsel for the purposes of securing legal advice. While Innes created the document on a company-issued device while out of the office on vacation, she saved it to the device's local hard drive, not to ICBL's server. *See* Innes Decl. ¶ 7 (Ex. 2). Moreover, Innes provided the document only to her counsel, using her private Gmail account, not her ICBL email account. *Id*. ¶ 8. Furthermore, when Innes discovered during her interview with KPMG that the document had been inadvertently disclosed, she did not answer questions about the contents because she recognized that it was a privileged document that should have remained confidential. *Id*. ¶ 14.

The government argues that the attorney-client privileged document was not confidential because a copy remained on Innes' company-issued device. When evaluating, as a practical matter, whether an employee has a reasonable expectation that an attorney-client privileged

communication would remain confidential despite being stored on a company device, courts generally consider four factors:

> (1) does the corporation maintain a policy banning personal use or other objectionable use; (2) does the company monitor the use of the employee's computer or e-mail; (3) do third parties have a right of access to the computer or e-mails; and (4) did the corporation notify the employee, or was the employee aware, of the use and monitoring policies.

*United States v. Hatfield*, No. 06-CR-550 (JS), 2009 WL 3806300, *8 (E.D.N.Y. Nov. 13, 2009).

Applying these four factors, most courts "have held that employees do not waive privilege simply by maintaining documents on a company computer system." *Id*. *See also, id.* at *8, n. 12 (observing that "the Second Circuit would disfavor a rule that an employee automatically waives privilege by storing personal legal documents on a company computer"). Like the majority of courts, this Court should find that the attorney-client privileged document was confidential, even though it was saved to the local drive of a company-issued device.

*First*, ICBL did not have a policy that expressly prohibited employees from using a company computer for personal matters. Nor did the company have a policy providing that anything saved on a company-issued device would not be confidential. Rather, the company policy prohibited use in limited circumstances, including "in the conduct of an outside business or in support of any religious, political, or other outside daily activity," or "to create, access, store, print, solicit or send any materials that are harassing, threatening, abusive, sexually explicit, or otherwise offensive or inappropriate." *See* Ex. F. to Gov't Mot, DOJ-CDL-00049920. Employees used company issued computers for personal use on occasion. *See* Innes. Decl. ¶ 6 (Ex. 1). In fact, when Innes was suspended, she informed John Wight, President and CEO of BF&M, ICBL's parent company, that she had "personal emails on [her] desktop at the office." *See* Ex. D. to Gov't Mot., DOJ-CDL-00050261. Wight did not respond that such use violated company policy. Because ICBL's policy does not expressly prohibit employees from using their company-issued devices for personal legal matters, this factor supports a finding that the document was confidential. *See Hatfield*, No. 06-CR-550, 2009 WL 3806300, *8 (this factor favored a finding that the attorney-client privileged document was confidential where the company's policy did "not expressly prohibit employees from using their company computers to conduct personal legal matters").

*Second*, there is no evidence that ICBL actually monitored the company's computer system, let alone local hard drives of employees' devices. The government, in support of its position, attaches a letter from ICBL's counsel, stating that the company "monitors Company-issued computers and electronic devices . . . when a breach of Company policy is suspected, when requested by senior management, and in other circumstances as appropriate." *See* Ex. G to Govt's Mot. An unsworn letter from counsel is not evidence. Moreover, the government fails to identify a single example of ICBL actually monitoring an employee's computer or electronic device. As Innes attests, during her time as CEO, ICBL did not, to her knowledge, monitor employees' computers or electronic devices, let alone the local hard drive of employees' computers. *See* Innes Decl. ¶ 18 (Ex. 2). Nor does she recall requesting IT administrators to

monitor other employees' company-issued devices. *Id*. *See Curto v. Med. World Commc'ns, Inc.*, No. 03CV6327 (DRH), 2006 WL 1318387, *3 (E.D.N.Y. May 15, 2006) (finding that, while company identified four instances in which it monitored computer use of employees, the lack of enforcement created a false sense of security that lulled employees into believing that the policy would not be enforced).

Furthermore, while the company's policy provides that it "reserves the right" to monitor information contained on an employee's company issued computer and the employee's use of the internet or intranet, the policy does not provide that the company will monitor the information on an employee's computer, let alone information stored on a local hard drive not connected to ICBL's network. *See Hatfield*, No. 06-CR-550, 2009 WL 3806300, *9 ("the Policy nowhere expressly indicates that . . . [the company] *will* monitor employee computer hard drive or e-mail files, only that it has the *right* to do so.") (emphasis in original). And the government has presented no evidence that the company actually monitored information stored on the local hard drives of company issued devices. *See id*. ("And there is no evidence that the Company did, in fact, monitor such files . . . . Here, the privilege documents originated from . . . [the defendant]'s computer hard drive . . . . Thus, this factor also tips in . . . [the defendant]'s favor.").

*Third*, the government concedes that ICBL did not grant third-parties the right to access ICBL's computers or emails. *See* Docket # 54 at 5. Nonetheless, the government argues that when Innes prepared the attorney-client privileged document, she should have foreseen that ICBL might have chosen to grant a third-party, such as KPMG, access to employees' computers. When Innes created the attorney-client privileged document on October 9, 2016, no third-party had been granted access to ICBL's computers or systems. Moreover, Innes was not requested to turn over her computer to KPMG until October 25, 2016, over two weeks after she created the document. Accordingly, when she created the document and sent it to her counsel through her private email account, she had a reasonable expectation that the document would be and remain confidential.

*Finally*, while Innes was generally aware of the company's policy, she also knew that it did not provide that the company *will* monitor employee's computer hard drives. *See Curto*, No. 03CV6327, 2006 WL 1318387, *6 (policy provided only that the company "may" monitor use of company resources). Innes also knew that the policy was not enforced, especially with respect to monitoring the local hard drive of employees' computers. *See id*. at *8 ("in light of the few instances of actual monitoring . . . , together with the fact that many . . . employees had personal e-mail accounts at work, . . . employees were lulled into a 'false sense of security' regarding their personal use of company-owned computers").

Innes had a reasonable expectation that the attorney-client privileged document would be and remain confidential when she created it and emailed it to her counsel. She prepared the document while she was out of the office, and saved it to her device's local hard drive, not to ICBL's server. Then, while still out of the office, Innes emailed the document to her counsel using her private Gmail account, not with her ICBL email account. Innes' reasonable expectation was that the attorney-client privilege document she prepared at the direction of and for her counsel to secure legal advice would remain and be confidential. *See Curto*, No. 03CV6327, 2006 WL 1318387, at *8 (privilege not waived as to documents recovered from

employee's company-owned laptop when documents were created on laptop while employee was working from home, not in office). *See, e.g.*, *Orbit One Commc'ns*, 255 F.R.D. at 108 (expectation of confidentiality reasonable when document stored on computer out of office).[4]

### B. The Inadvertent Disclosure of the Attorney-Client Privileged Document Does Not Waive the Privilege.

Inadvertent production will not waive the privilege "unless the conduct of the producing party or its counsel evinced such extreme carelessness as to suggest that it was not concerned with the protection of the asserted privilege." *Desai v. Am. Int'l Underwriters*, No. 91 CIV 7735, 1992 WL 110731, *1 (S.D.N.Y. May 12, 1992); *Curto*, No. 03CV6327, 2006 WL 1318387, *2 (same); *Martin v. Valley Nat'l Bank of Ariz*, No. 89 Civ. 8361, 1992 WL 196798, *2 (S.D.N.Y. Aug. 6, 1992) ("inadvertent production of a document will result in a waiver only if the release of the document constituted a knowing waiver, rather than a simple mistake").

When evaluating whether the inadvertent disclosure of a privileged communication stored on a company computer constitutes a waiver, courts generally balance four relevant factors: "[1] the reasonableness of the precautions taken by the producing party to prevent inadvertent disclosure of privileged documents; [2] the volume of discovery versus the extent of the specific disclosure [at] issue; [3] the length of time taken by the producing party to rectify the disclosure; and [4] the overarching issue of fairness." *See Curto*, No. 03CV6327, 2006 WL 1318387, *3 (citation omitted). *See also* Fed. R. Evid. 502(b) (a disclosure does not operate as a waiver in a federal proceeding where the disclosure was inadvertent, the holder of the privilege took reasonable steps to prevent disclosure, and the holder promptly took steps to rectify the error). Balancing these factors here, the inadvertent disclosure did not evince such extreme carelessness as to suggest that Innes was not concerned with the protection of the privilege.

*First*, Innes took reasonable precautions to keep the attorney-client privileged document confidential. She prepared the document while she was out of ICBL's office, and she saved it on her local hard drive, to which ICBL did not have access. She then emailed the document using her private Gmail account, to which ICBL likewise did not have access. *See Curto*, No. 03CV6327, 2006 WL 1318387, *3 ("Plaintiff did take reasonable precautions to prevent inadvertent disclosure in that she sent the e-mails at issue through her personal AOL account which did not go through the Defendants' servers").[5]

---

[4] The government relies on the district court's decision in *United States v. Nordlicht*, No. 16-CR-640 (BMC), 2018 WL 705548 (E.D.N.Y. Feb. 2, 2018), in arguing that Innes did not have a reasonable expectation of privacy in the attorney-client privilege document. But that case involved an employee's expectation of privacy under the Fourth Amendment; the case did not address the confidentiality of personal computer files with respect to the attorney-client privilege. *See Curto*, No. 03CV6327, 2006 WL 1318387, *5 ("All of these cases . . . arise in the context of an employee asserting a right to privacy claim, either under the Fourth Amendment or common law. . . . [T]hey are not controlling as they do not address the confidentiality of employee's e-mails and personal computer files with regard to the attorney-client privilege[.]").

[5] The government attempts to distinguish *Curto* on the ground that the plaintiff, in addition to using her private email account, also "attempted to delete" the privileged material.

When ICBL demanded that she turn over her company-issued devices, she had forgotten that the attorney-client privileged document was saved to the local hard drive of one of the devices. It was Innes' understanding that ICBL requested her devices to review her work emails. *See* Ex. D to Gov't Mot, DOJ-CDL-00050259 (email communication from Ingrid Innes to John Wight) ("I just received this email and would be happy to [return my computer and phone], but I am flying to Barbados this morning and actually at the gate . . . . I don't have access to more than one year of emails on my laptop . . . [and e]mails on my BlackBerry are automatically dropped I believe after one month"). And because she had sent the attorney-client privileged document through her private Gmail account, she did not remember that a device contained a privileged document. *See* Innes Decl. ¶ 15 (Ex. 1). Innes' declaration that the disclosure was an inadvertent mistake is unrebutted by anything the government has presented. It would be an unreasonable inference to suggest that Innes would have meant to turn over to ICBL a chronology of events that she prepared for her attorney in connection with a dispute with ICBL.

*Second*, comparing the volume of the documents produced versus the extent of the specific inadvertent disclosure supports a finding that there was no waiver. This is not a case where a handful of hard copy documents were produced, one of which was privileged. Instead, Innes was required to produce computer-devices, likely containing hundreds if not thousands of separate documents, only one of which was a three-page attorney-client privileged communication. *See Curto*, No. 03CV6327, 2006 WL 1318387, *3 ("with regard to the volume of the material inadvertently disclosed compared to the volume of discovery in general, this case involved limited items that were recovered from a computer as opposed to a 'tremendous volume of paperwork'").

*Third*, Innes and her counsel immediately asserted the privilege when they discovered that the confidential document had been inadvertently disclosed. Innes and her counsel did not discover that the attorney-client privileged document had been inadvertently disclosed until it was shown to them during an interview of Innes by KPMG. Innes' counsel informed KPMG that the document was protected by the attorney-client privilege, directed Innes not to answer questions about the document, and terminated the interview. *Cf. United States v. Finazzo*, No. 10-CR-457, 2013 WL 619572, *11 (E.D.N.Y. Feb. 19, 2013) (finding waiver where defendant engaged in an "hour-long discussion" with employer regarding disclosed privileged communication). Moreover, Innes' counsel formally objected to ICBL's use of the document in connection with an employment hearing, reaffirming that the document was privileged. *See* Ex. 3 ("This item is subject to privilege, client and attorney privilege. It was produced in a series of emails where I have clearly indicated that the subject matter is confidential and privileged. I continue to assert this privilege on behalf of my client. This item should therefore be removed from the exhibits or indeed not exhibited at all during the course of the hearing.").

*Finally*, the overarching issue of fairness strongly counsels in favor of a finding that the inadvertent disclosure did not result in a waiver of Innes' attorney-client privilege. As the Department of Justice itself recognizes, the attorney-client privilege serves an extremely

---

But the balance of the four factors here, just as in *Curto*, support the conclusion that the inadvertent disclosure should not result in a waiver.

important function in – and is an essential component of – the American legal system. *See* Justice Manual § 9-28.710. Innes prepared the attorney-client privileged document at the direction of and for her counsel to secure legal advice. The attorney-client privilege document includes Innes' frank attempt to relay the background facts and events, as she understood them at the time, leading to her suspension. Innes' counsel needed this information to counsel his client, develop a strategy, and provide legal advice. Innes' communication is the essence of what the attorney-client privilege protects. *See Curto*, No. 03CV6327, 2006 WL 1318387, *3 ("the 'overarching issue of fairness' weighed in Plaintiff's favor because clients should be encouraged to provide full disclosure to their attorneys without fear that their disclosure will be invalid"). Finding a waiver of Innes' privilege here, where she attempted to keep the document confidential by saving it to a local hard drive and emailing it with her personal email account, would not only be unfair, but it would abrogate the privilege "in circumstances to which its venerable and worthy purposes fully pertain." *In re Grand Jury Investigation*, 399 F.3d at 536.

### III. Conclusion

For the foregoing reasons, Innes respectfully requests that this Court enter an order denying the government's motion requesting a finding that the document created by Innes – at direction of and for her counsel – is not protected by the attorney-client privilege, and further ordering that all copies of the attorney-client privileged document in the governments possession be destroyed or returned to Innes' counsel.

Sincerely,

VARNUM

Ronald G. DeWaard

RGD/kdv